MADDOX, Retired Justice.
The question presented in this zoning case is whether the plaintiff, Ronnie Earl Catón, has standing to bring an action against the City of Thorsby and the City’s zoning commission challenging an alleged zoning decision affecting property he owned when he made a rezoning request but had sold before the formal meeting of the zoning commission at which his request was to be considered.
The circuit court granted the motion for a summary judgment filed by the City and the City of Thorsby Zoning Commission[1] (“the zoning commission”) on the grounds that Catón was not the real party in interest and that he lacked standing, because he never received a formal adverse ruling from the zoning commission. We agree, and we affirm the summary judgment.

Facts

Ronnie Earl Catón owned two adjacent lots of real property on Rebel Street in Thorsby, Alabama.[2] He acquired the first lot in 1988, and for several years, Catón operated a T-shirt and sweatshirt screen-printing business from the house and lot at 12 Rebel Street. In 1992, Catón acquired the house and lot next door, 10 Rebel Street, and he and his mother used that house as a residence. Before Catón purchased the property at 10 Rebel Street, the house located on that lot had been used as an insurance office. He continued, for a time, to operate his business in the house located at 12 Rebel Street. Catón subsequently ceased his business operations in the house located at 12 Rebel Street, and during his mother’s illness, Catón rented the house for residential use.
In December 1997, Catón attended a meeting in connection with a proposed zoning ordinance for the City of Thorsby. The proposed ordinance was the City’s first attempt at zoning property; it classified Caton’s property as residential. Ca-tón testified at trial that at that meeting he spoke to a member of the zoning commission and to a consultant from Birmingham who was helping the City of Thorsby draft the zoning ordinance. According to Catón, he told both individuals that although he was using both lots as residential property, he wanted both lots zoned for commercial use. Catón testified that he was told to leave both lots as they were in the proposed ordinance (zoned residential) for the time being. Catón testified further that he was told that when he was ready to have the properties zoned for commercial use, just to come by and let “them” know.
Catón stated that he listed both properties for sale in April 1999 and that a Mr. *1059 Lloyd Geeslin offered $75,000 for both lots, but backed out of the sale because, according to Catón, Geeslin was told by Zane Martin, the mayor of the City of Thorsby, that the properties were zoned for residential use and would not be rezoned for commercial use. The facts tend to show that Catón then telephoned the mayor, who, according to Catón, told Catón to submit a written request to rezone the property. Catón subsequently delivered a letter to Martin on September 20, 1999, requesting that both lots be rezoned for commercial use. Catón testified that Martin then telephoned him and told him that the zoning commission was meeting on “that Thursday night.” He testified, however, that the zoning commission did not meet. Catón stated that Martin then told him to talk to Kay Shropshire, the chairperson of the zoning commission, and the day after the scheduled meeting of the zoning commission, Catón went to Shropshire’s house. According to Catón, Shropshire stated that she had telephoned the members of the zoning commission and that they had decided not to rezone the properties.
Catón attended a subsequent meeting of the zoning commission and voiced his displeasure over the fact that he had been told that a decision not to rezone his properties had been made before the zoning commission held its meeting. On October 7,1999, Catón sold the two properties for a total of $15,000.[3]
On November 8, 2000, Catón sued the City and the zoning commission. In count one of the complaint, Catón alleged that the City and the zoning commission had refused to rezone his property and that their refusal “deprived him of due process of law under the Constitution and laws for the State of Alabama for which he is due to be fully compensated in damages.”[4]
On December 21, 2001, the City and the zoning commission filed a motion for a summary judgment, contending that Catón never filed a formal rezoning request and that the “[z]oning [commission] never made an official determination regarding [Caton’s] desire to have his land rezoned.” In his brief in opposition to the motion for a summary judgment, Catón argued that “[h]e did make a request for a zoning change, and the [z]oning [commission] Members voted on the telephone not to allow it; [that] he was denied any public hearing, and [that] the Town Council never entertained his request at all.”
On April 5, 2002, the trial court entered a summary judgment. In its summary-judgment order, the trial court stated:
“The Alabama Code provides a statutory right to a ‘party aggrieved’ to appeal an adverse decision of a board of zoning adjustment. Ala.Code [1975,] § 11-52-81. The Court of Civil Appeals has also recognized that in order to have standing to appeal a decision of a board of adjustment the party must be ‘aggrieved’ or have suffered some detriment. Crowder v. Zoning Board of Adjustment, 406 So.2d 917 (Ala.Civ.App.1981). In Board of Adjustment v. Matranga, Hess & Sullivan, [51 Ala.App. 154, 283 So.2d 607 (1973)], the Alabama Court of Civil Appeals held that an applicant for a zoning variance must prove *1060 that they have legal or equitable ownership of the property in order to maintain an action before the circuit court or board of adjustment. Hudson v. Mobile County, 439 So.2d 1304, 1306 ([Ala.Civ. App.] 1983)(citing 51 Ala.App. 154, 283 So.2d 607 (1973)). In Matranga, the application was made by the holder of an option to purchase the property, which the court found insufficient. Id.
“The statute and cases supra address standing to appeal from boards of adjustment, which is a somewhat different situation from this case where the appeal is based on the decision, or lack thereof, of a [zoning] commission. Despite the differences in the roles of the two entities, both require that the person making the request have a recognized interest in the property they seek to have rezoned. There is no dispute that Mr. Catón owned the properties at 10 and 12 Rebel Street when he made his request to the [zoning] [c]ommission by letter on September 29, 1999. His ownership of those properties gave him the requisite property interest to make his request for rezoning.
“However, when Catón sold those properties, approximately two weeks later, and before a public hearing could be set, he could no longer make the rezoning request because they were no longer his properties. The delay between the first meeting, where Catón addressed the [zoning] [Commission, and the scheduling of the next meeting for a vote on the request, was the result of the [zoning] [Commission’s complying with the notice requirement of § 11-52-77 of the Alabama Code 1975. That provision requires notice in a newspaper of general circulation for at least 15 days before the passage of a new ordinance. Id. A request for rezoning, unlike a variance, requires the city or town to adopt a new ordinance[;] thus the notice requirement referenced supra.
“In this case, the undisputed facts show that the plaintiff, Catón, sold the property before the [zoning] [Commission could schedule a public meeting or reach a decision on his request. The result being there was no decision from which he could appeal. Furthermore, when he filed the instant action, he no longer owned the property involved in this case. Thus, Catón never suffered an adverse decision by the [zoning] [Commission or the City Council and, after selling the property, he no longer had an interest in the property. Rule 17(a) of the Alabama Rules of Civil Procedure sets out the general and longstanding rule that ‘[e]very action shall be prosecuted in the name of the real party in interest.’ (2001). Based on the foregoing, the plaintiff, Catón, is not the real party in interest because [he] never received a formal adverse ruling from the Thorsby [Zoning] Commission. Therefore, he is not the real party in interest and lacks standing to bring this claim. Because the court reached its decision in this case based on the plaintiffs lack of standing the court finds it unnecessary to rule on his other claims.
“The problems that can result from conducting an ‘informal poll’ on an issue such as this one are evident from the record. Although having an ‘informal poll’ is unwise and problematic, the court does not feel that the ‘poll’ in this case was an official vote on the request based on the way the members treated the ‘poll.’ When the [zoning] Commission realized their error, they followed proper procedure and were in the process of having a hearing and vote on Caton’s request when he sold his property. Catón was understandably angry about the situation, but he should have *1061 waited until the board reached an official decision before he sold his property.
“It is therefore, ordered, [adjudged, and decreed by this court that, pursuant to Rule 56 of the Alabama Rules of Civil Procedure, the Motion for Summary Judgment is granted in favor of the Defendant, City of Thorsby, on all counts of the Plaintiffs complaint.”

Standard of Review

This Court’s standard for reviewing a summary judgment has been stated many times. Recently, in Potter v. First Real Estate Co., 844 So.2d 540 (Ala.2002), this Court stated:
“We review a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala.2002).
“ We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’
“Nationwide Prop. & Cas. Ins. Co. [v. DPF Architects, P.C.], 792 So.2d [369] at 372 [(Ala.2001)](citations omitted), quoted in American Liberty Ins. Co., 825 So.2d at 790.”
844 So.2d at 545.

Discussion

Catón contends that he is indeed an “aggrieved party” under the provisions of § 11-52-80, Ala.Code 1975. To support his argument, Catón cites H.H.B., L.L.C. v. D & F, L.L.C., 843 So.2d 116 (Ala.2002), in which this Court held that a neighboring property owner had standing to intervene as an aggrieved party in an action appealing the denial of a requested zoning change. In H.H.B, L.L.C., this Court stated:
“Although there is no express statutory authority that allows H.H.B. to intervene to object to a rezoning, H.HJB.’s concerns are analogous to a third-party’s right to intervene as an ‘aggrieved party’ pursuant to § 11-52-80, Ala.Code 1975, in an appeal from a zoning board of adjustment’s decision to grant a variance in zoning regulations. This Court discussed the issue of an aggrieved party’s standing in Ex parte Steadham, 629 So.2d 647 (Ala.1993):
“ ‘ “In order for a party to have standing to challenge the decision of a zoning board of adjustment he must be a ‘party aggrieved.’ To establish himself as a ‘party aggrieved’ he must present ‘proof of the adverse effect the changed status of the rezoned property has, or could have, on the use, enjoyment and value’ of his own property.” ’
“629 So.2d at 648 (quoting Crowder v. Zoning Bd. of Adjustment, 406 So.2d 917, 918 (Ala.Civ.App.1981), quoting in part Cox v. Poer, 45 Ala.App. 295, 297, 229 So.2d 797, 799 (1969)). After reviewing Jones’s testimony in light of the above principles, we conclude that H.H.B. presented enough evidence to *1062 show that rezoning the subject property to B-2 could have an adverse effect on H.ELB.’s property. Therefore, H.H.B. had standing to intervene in this case and has standing to appeal the circuit court’s judgment.”
843 So.2d at 119.
Catón argues that he has shown that the “refusal to follow any procedural due process and allow him a hearing before a decision was made ... caused his property to drop in value by a minimum of $60,000.” Catón further states:
“The [zoning] Commission never recorded a vote on the property. The ‘hearing’ they had was to hear what Mr. Catón said, not to consider the merits of the zoning on the property.”
(Caton’s brief, p. 22.)
The City of Thorsby argues that “the undisputed facts show that the plaintiff, Catón, sold the property before the [zoning] Commission could schedule a public meeting or reach a decision on his request. The result is that there was no decision from which Catón can appeal.... Thus, Catón never suffered an adverse decision by the [zoning] Commission or the City Council....” (City’s brief, p. 9.)
The record shows that Catón was attempting to amend the zoning ordinance, which was passed pursuant to the provisions of § 11-52-77, Ala.Code 1975. Section 11-52-78, Ala.Code 1975, states the procedure to amend such an ordinance:
“Such ... ordinances passed under the authority of this article may from time to time be amended, supplemented, changed, modified or repealed.
“The provisions of Section 11-52-77 relative to public hearings and official notices shall apply to all changes and amendments.”
Section 11-52-77, Ala.Code 1975, states that no ordinance shall be passed by a municipal corporation until the municipal corporation has complied with one of the two following procedures:
“(1) Prior to adoption, the proposed ordinance shall be published in full for one insertion and an additional insertion of a synopsis of the proposed ordinance, one week after the first insertion ...; both such insertions shall be at least 15 days in advance of its passage and in a newspaper of general circulation....
“(2) Prior to adoption, notice that an ordinance will be considered shall be published for three consecutive weeks in a newspaper of general circulation in the county....”
We believe that the facts in this case are analagous to the facts in Ex parte Bedingfield, 782 So.2d 290 (Ala.2000). In Beding-field, property that was, through an “honest or clerical error,” mistakenly classified as residential rather than business could not be rezoned without strict compliance with the notice provisions of § 11-52-77 and -78, Ala.Code 1975. In Bedingfield, this Court stated:
“In their petition for a writ of certio-rari, the Bedingfield group contends that the reclassification of Yarbrough’s property amended the zoning ordinance and that §§ 11-52-77 and 11-52-78 require notice of an amendment to a zoning ordinance before the amendment can be enacted. Kennon & Assocs., Inc. v. Gentry, 492 So.2d 312 (Ala.1986). In Kennon, this Court held:
“ ‘[T]he statutory 15-day notice requirements contained in § 11-52-74 and § 11-52-77 are mandatory and “must both be complied with when a city publishes notice of a proposed zoning ordinance or amendment.” ’
“492 So.2d at 315 (quoting Builders Dev. Co. v. City of Opelika, 360 So.2d 962, 964 (Ala.1978)). This Court further stated:
*1063 “ ‘[W]here there had been a failure to strictly follow the procedural requirements applicable to the action sought, especially notice provisions, this Court has invalidated the ordinance passed or the action taken, irrespective of whether any person was prejudiced by the error or omission. See [1 Anderson, American Law of Zoning, § 405 (2d ed.1976)], and cases cited at n. 37, p. 189. Thus, not only has the City of Phenix City in this case adopted regulations which by their express terms make specific notice requirements mandatory, but also there is ample authority for the view that, in adopting or amending a zoning ordinance, mandated procedural steps, especially notice requirements, must be strictly followed. We adhere to this view in the present case.’
“492 So.2d at 318-
“Section 11-52-78 governs the amendment, the change, or the repeal of zoning ordinances:
“ ‘Such regulations, restrictions and boundaries and ordinances passed under the authority of this article may from time to time be amended, supplemented, changed, modified or repealed.
“ ‘The provisions of Section 11-52-77 relative to public hearings and official notices shall apply equally to all changes and amendments.’ (Emphasis added [in Bedingfield ].)
“The opinion of the Court of Civil Appeals permitting ‘substantial compliance’ with §§ 11-52-77 and 11-52-78 directly conflicts with Kennon, supra, and its progeny. This Court has required strict compliance with the notice and hearing requirements of § 11-52-77 and that strict compliance requirement extends to § 11-52-78. Kennon, supra, and its progeny. Section 11-52-78 requires the Town Council to comply with the notice and hearing requirements of § 11-52-77 before the Town Council may amend, change, supplement, modify, or repeal the zoning ordinance. Although the error in the proposed zoning ordinance which classified Yarbrough’s property as ‘residential’ rather than ‘business’ was, without dispute, an honest or clerical error, correcting the error required a change to the proposed ordinance. The Town Council changed the classification of Yarbrough’s property from ‘residential’ to ‘business’ and then adopted the ordinance without its having been posted in its changed form with notice that it would be considered in that form as required by § 11-52-77. Thus, because the Town Council did not comply with the notice and hearing requirements of § 11-52-77 before it purported to adopt the ordinance with the changed classification of Yarbrough’s property from ‘residential’ to ‘business,’ the zoning ordinance is invalid for lack of the notice required by § 11-52-77 for the ordinance (in the form purportedly adopted) or for lack of the notice required by § 11-52-78 for the change itself. Kennon, supra. Therefore, the trial court erred in entering summary judgment in favor of the defendants, and the Court of Civil Appeals erred in affirming the judgment of the trial court. Accordingly, we reverse the judgment of the Court of Civil Appeals, and we remand this cause for further proceedings consistent with this opinion.”
782 So.2d at 292-94.
Catón argues that the acts of the City— the telephone poll of certain members of the zoning commission coupled with Shropshire’s statement that the zoning commission had decided not to rezone the property — constituted a formal refusal by the *1064 City of his request. We cannot agree. The procedural requirements of §§ 11-52-77 and 11-52-78, Ala.Code 1975, are mandatory, and Catón has failed to show us that the procedural requirements of the law were followed. Although the trial court found that the actions of Mayor Martin and Shropshire were “unwise and problematic,” it nevertheless found that the procedural requirements of law were not followed and it denied Catón the relief that he sought. We affirm its judgment.
This opinion was prepared by retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
MOORE, C.J., and BROWN, HARWOOD, and STUART, JJ., concur.
SEE, J., concurs in the result.

. The record shows that the parties and the trial court refer to the "zoning commission” by various names, including: the City of Thorsby Zoning and Planning Board, the planning and zoning commission, the planning commission, the zoning and planning commission, the Thorsby Planning Commission, and the zoning board.

. The record shows that Catón also acquired a third parcel that adjoined both lots. The third parcel was a small "pie-shaped” parcel.

. Catón testified that he had paid $41.000 for his interest in the two parcels.

. In count two Catón alleged that the "1997 [z]oning [p]lan of the City of Thorsby, which designated Mr. Caton’s property as residential, constituted an unlawful taking under the Constitution and laws of the State of Alabama and the Constitution of the United States, Amendment V” and that this "unlawful taking" "constituted a violation of due process under 42 U.S.C. § 1983 and the Fifth Amendment to the United States Constitution.”